FILED
98 DEC 23 PM 2:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Veronica Wilkins ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 97-BU-874-S |
| ) | |
| Lawson State Community College, et al. ) | |
| ) | |
| Defendants. ) | |

ENTERED
DEC 23 1998

## Memorandum Opinion

Currently before the court are the motions of the defendants, Lawson State Community College ("Lawson State") and Charles McFarland ("Mr. McFarland"), for Summary Judgment, which were both filed on February 12, 1998. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court concludes that Lawson State's motion is due to be granted in part and denied in part and that Mr. McFarland's motion is due to be denied in its entirety.

Ms. Wilkins's claims arise out of her employment at the bookstore at Lawson State Community College. She alleges that her supervisor, Mr. McFarland, sexually harassed her in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiff also attempts to bring claims against Mr. McFarland under 42 U.S.C. § 1983, as amended by the Civil Rights Act of 1991, and under Alabama law for the torts of assault and battery and invasion of privacy. Plaintiff requests injunctive relief, as well as front pay, back pay, nominal, compensatory, and punitive damages.

## FACTUAL SUMMARY

Ms. Wilkins attended Lawson State Community College intermittently from the spring of 1991 until she graduated with an associate nursing degree in June 1996. Wilkins Dep. 31, 77, 78. While she was a student, she was employed by Lawson State for three separate periods where she was supervised by Mr. McFarland. In the fall of 1992, Ms. Wilkins began working part-time for Mr. McFarland at Lawson State's financial aid office. Wilkins Dep. 53. Shortly thereafter, Mr. McFarland and Ms. Wilkins were reassigned to work in the Lawson State bookstore. Wilkins Dep. 59-60. Shortly after beginning work in the bookstore, Ms. Wilkins claims she began having problems working for Mr. McFarland. Wilkins Dep. 113, 117, 121-123. Ms Wilkins claims that, in 1992 Mr. McFarland made her feel uncomfortable by the way he looked at her, undressing her with his eyes, and by making statements such as, "You sure are sexy." Wilkins Dep. 138-142. Ms. Wilkins did not, however, inform anyone at Lawson State of Mr. McFarland's conduct. Wilkins Dep. 138-139, 141, 144.

In January 1993, the plaintiff became pregnant but continued to work at the bookstore until about August of that year. Wilkins Dep. 151, 172. The plaintiff alleges that during this period, Mr. McFarland's statements to her became increasingly personal, such as how he "love[d] small breasts" and that the plaintiff "needed a real man" and he "could be that man." Wilkins testimony at Charles McFarland's termination hearing, hereinafter "Hearing," 67-70. Ms. Wilkins claims that Mr. McFarland also began to make physical contact with her more often. For example, the plaintiff stated, while they were working in the stockroom retrieving books, Mr. McFarland would brush up against her breasts and buttocks and then make suggestive comments about how it "felt good." Wilkins dep. 155-56, Hearing 74-75. She also claims that on one occasion in March or April 1993 Mr. McFarland grabbed her hand and put it on his "private part" and said, "This is the effect that you have on me." Hearing 73-74. Ms. Wilkins, however, still did not inform anyone at Lawson State of Mr. McFarland's conduct.

After giving birth in September 1993, the plaintiff did not take classes at Lawson State or work at the bookstore during that fall quarter. Wilkins Dep. 166, 172, Hearing 63-64. She returned to

her studies the following quarter, in December 1993, Hearing 63-64, and apparently returned to work in the bookstore during the 1994 spring quarter. Wilkins Dep. 175, 177. The plaintiff claims that Mr. McFarland continued to brush up against her and otherwise make her feel uncomfortable, but she did not tell anyone at Lawson State about his conduct. Wilkins Dep. 180-81, 186-87.

In the fall of 1994, Ms. Wilkins stopped working in the bookstore, as she began the nursing program at Lawson State and also became a full-time employee at Children's Hospital. Wilkins Dep. 198; Hearing 64, 84. The plaintiff would still go to the bookstore to purchase books and supplies for school, and on these occasions, Mr. McFarland would ask her to return to her job at the bookstore, telling tell her "that things would be different" if she would come back. Wilkins Dep. 200. Ultimately, in July or August 1995, Ms. Wilkins did return to her employment in the bookstore, because, she said, such part-time work at Lawson State was more convenient for her schedule than her job at Children's Hospital. Hearing 86.

The plaintiff conceded that when she went back to work at the bookstore this final time, the working conditions and her relationship with Mr. McFarland were actually different, at least initially. Hearing 87. Indeed, the plaintiff admitted that for about the first four to six weeks after she returned, Mr. McFarland showed a changed attitude in the way he treated her, as he acted professionally and did not bother her. Hearing 87-88. Eventually however, Ms. Wilkins alleges, Mr. McFarland started to harass her again and in fact became even "bolder" than before. Wilkins Dep. 204. She states that Mr. McFarland would "just feel on [her] at random." Id. She further stated that he touched her "butt[, ...] grabbed [her] breasts[, ...] tried to stick his tongue in [her] ear[, ... and] brushed across [her] vagina." Id. at 205. Ms. Wilkins describes such behavior in her testimony by stating, "he was bold enough to actually put his hands on me, and do it on a continual basis, and know that it bothered me." Id. at 208. Plaintiff states that in the fall of 1995, Mr. McFarland began calling her at home for personal reasons. Id. at 218. Although she states that she always pushed Mr. McFarland away, plaintiff did not inform anyone of this alleged harassment. Id.

Finally, Ms. Wilkins claims that on one occasion in December 1995, Mr. McFarland assaulted her. Hearing at 98-102. She alleges that while they were working in the bookstore alone during

Christmas vacation, Mr. McFarland called her into his office and he pulled her to him and tried to kiss her as he sat on his desk. Id. at 101. Ms. Wilkins pushed him off, and, as he went to his knees, he pulled her pants down and tried to have oral sex with her. Id. at 101-02). He stopped, however, when he heard someone open a door on the "security side" of the store. (Id. at 102). The plaintiff reported this incident and other aspects of Mr. McFarland's prior conduct to officials at Lawson State in January 1996 and she filed a formal complaint in February 1996.

Mr. McFarland was suspended and, after an investigation, Lawson State terminated his employment based upon the allegations of sexual harassment. Indeed, it was revealed that, prior to receiving Ms. Wilkins's formal complaint, Lawson State had received two similar complaints about Mr. McFarland. In January 1994, another work-study student, Monica Peck, had notified Lawson State officials that she had been subjected to "unwanted touching" and "sexual remarks" by Mr. McFarland when she worked at the bookstore. Affidavit of Perry Ward, ¶ 11. Mr. McFarland received a written reprimand and warning that such conduct would not be tolerated. Id. Approximately one year later, however, another student, Amanda Malone filed a grievance against Mr. McFarland, although she decided not to file a formal complaint. As a result of the incident with Ms. Malone, Mr. McFarland received a verbal warning regarding his behavior. Id.

## SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers

to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. Cf. Mesnick v. General Elec. Co., 950 F.2d 816, 820 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Id. See also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11 th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), cert. denied, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary

judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

## CONTENTIONS & ANALYSIS

### I. Defendant Lawson State's Motion for Summary Judgment

In her sole claim against Lawson State, Ms. Wilkins alleges that she was subjected to a hostile work environment, in violation of Title VII. The elements of a Title VII sexual harassment claim are the following: (1) the employee must belong to a protected group; (2) the employee must have been subject to unwelcome sexual harassment; (3) the harassment must have been based on sex; (4) the harassment must have been sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there must be a basis for holding the employer liable for the harassment either directly or indirectly. Mendoza v. Borden, Inc., 158 F.3d 1171, 1175 (11th Cir. 1998); see also Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir.1982). With respect to the fifth element, it is well established that one basis for holding an employer liable for sexual harassment is to show that the employer itself was negligent because it knew or should have known about the conduct and failed to stop it. See Burlington Industries, Inc. v. Ellerth, ___ U.S. ___, 118 S.Ct. 2257, 2267 (1998). However, in Ellerth and Faragher v. City of Boca Raton, ___ U.S. ___, 118 S.Ct. 2275 (1998), the Supreme Court established that employers are also vicariously liable for the actions of their supervisory personnel when the supervisor creates a hostile environment in the workplace. In cases where it is not alleged that any tangible employment action has been taken by the supervisor, such as the instant one, the defending employer may interpose an affirmative defense to defeat liability; that affirmative defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b)

that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Coates v. Sundor Brands, Inc., 160 F.3d 688, 692 (11th Cir. 1998), quoting Faragher, ___ U.S. at ___, 118 S.Ct. at 2293; Ellerth, ___ U.S. at___, 118 S.Ct. at 2270.

Lawson State does not dispute that Ms. Wilkins is a member of a protected class or that the harassment of which she complains was based upon sex. Thus, there is no question as to elements (1) and (3) of the plaintiffs prima facie case on her Title VII claim. Lawson state does contest element (2): whether the harassment was "unwelcome." However, the court concludes that there is ample evidence suggesting that Ms. Wilkins repeatedly told Mr. McFarland that she did not approve of his sexual advances and statements. As to the fourth element, whether Mr. McFarland's sexual harassment was sufficiently severe to constitute a hostile and abusive work environment, Lawson State argues that the court may only review incidents of alleged harassment that occurred within the 180 days prior to April 15, 1996, the date upon which the plaintiff filed her EEOC charge. Indeed, Lawson State argues that it is entitled to a dismissal of the plaintiff's Title VII claim to the extent that it encompasses events occurring prior to October 15, 1995. In response, the plaintiff argues that she can recover for the entire period of her harassment while employed at the bookstore because, she contends, the hostile workplace created by Mr. McFarland's conduct constituted a continuing violation and is therefore compensable, notwithstanding the 180-day limitations period of Title VII.

In order to sustain a Title VII claim of sexual harassment, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the "alleged unlawful employment practice." §42 U.S.C. 2000e-5(d). The 180-day period "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." Stafford v. Muscogee County Bd. of Ed., 688 F.2d 1383, 1387 (11th Cir. 1982). Ms. Wilkins filed her charge of discrimination with the EEOC on April 15, 1996, which would establish a limitations period beginning on October 15, 1995, as Lawson State argues. However, the Eleventh Circuit Court of Appeals has recognized a continuing violation exception to the 180-day limitations period of Title VII. "Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid

charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." Beavers v. American Cast Iron Pipe Co., 975 F.2d 792, 796 (11th Cir. 1992). Thus, where it is shown that a hostile workplace is a continuing violation of Title VII, the employee may recover for the entire period of that violation, even though some of its constituent events occurred prior to the 180-day limitations period. See, e.g., Waltman v. International Paper Co., 875 F.2d 468 (5th Cir. 1989).

Even assuming that the plaintiff could recover based upon events that occurred only between October 15, 1995 and April 15, 1996, the court concludes that a genuine issue of material fact would exist regarding whether the plaintiff was, in violation of Title VII, subjected to a hostile work environment at the Lawson State bookstore while under Mr. McFarland's supervision. However, the plaintiff urges that the entire period of her employment under Mr. McFarland's supervision between the fall of 1992 and January 1996 could constitute a continuing violation for which she might recover. In fact, it has been recognized that a hostile work environment, by its very nature, often involves a continuing violation. See Waltman, supra, 875 F.2d at 476; West v. Philadelphia Electric Co., 45 F.3d 744, 755 (3rd Cir. 1995); Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998); Gipson v. KAS Snacktime Co., 83 F.3d 225, 228 (8th Cir. 1996). Nonetheless, the plaintiff's argument ignores the undisputed fact that there were two substantial gaps in her employment at the bookstore between 1992 and 1996. After giving birth to her child, the plaintiff did not work at the bookstore from about September 1993 to about March or April of 1994. She also did not work at the bookstore from about September 1994 to July or August 1995, after she became employed at Children's Hospital and began the nursing program at Lawson State. It has been noted that where an employee leaves her job for a significant period, such time outside of the hostile workplace may allow its effects to dissipate and thus mark the end what would otherwise constitute a continuing violation. See Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3rd Cir. 1997), cert. denied, 118 S.Ct. 1079 (1998). But see Waltman, supra, (where the court considered incidents of sexual harassment both before and after a plaintiff's 2 ½-month medical leave of absence allegedly occasioned because the harassment caused the plaintiff to become ill). Moreover, Ms. Wilkins admitted that for

approximately four to six weeks after she returned to work in the bookstore in July or August 1995 after approximately ten months off, Mr. McFarland exhibited a change in the way he treated her, that he did not bother her, and that he acted professionally. The court concludes, therefore, that while there is at least a fact question as to the existence of a continuing violation based upon the allegations of a hostile workplace, such a question only exists from the time that Mr. McFarland allegedly began to sexually harass Ms. Wilkins four to six weeks after she returned to work in July or August of 1995. Accordingly, Lawson State's motion for summary judgment is due to be granted in part; to the extent that the plaintiff seeks to recover under Title VII for an allegedly hostile work environment that existed prior to her last period of employment at the Lawson State bookstore, she may not do so.

However, while Ms. Wilkins may not recover on her Title VII claim for events occurring prior to her last period of employment at the bookstore, that is not to say that evidence of such prior events must be excluded at trial. The limitations period of Title VII is not necessarily a bar to the admissibility of pre-period acts that bear upon the work environment and on the employer's awareness of that environment. West, supra, 45 F.3d at 748. While evidence of discriminatory treatment may concern time-barred conduct, it may be relevant to illuminate current practices which, viewed in isolation, may not indicate discriminatory treatment. Allen v. County of Montgomery, Alabama, 788 F.2d 1485, 1488 (11th Cir. 1986).

Lawson State further alleges that the evidence indicates that as soon as it became aware of Ms. Wilkins's complaint regarding Mr. McFarland's sexual harassment of her, he was immediately suspended and ultimately terminated. Thus, Lawson State argues, it cannot be held directly liable under Title VII because, it contends, it took prompt remedial action to stop the harassment as soon as it became aware of it. It is true that once it received the plaintiff's complaint regarding Mr. McFarland in February 1996, Lawson State acted quickly to halt the harassment. However, the evidence also indicates that prior to receiving Ms. Wilkins's complaint, Lawson State had received two similar complaints from female students claiming that Mr. McFarland had sexually harassed them in 1994 and 1995 and that Lawson State had only warned Mr. McFarland that such conduct was inappropriate. In Munn v. Mayor and Aldermen of Savannah, 906 F.Supp. 1577, 1584 ( S.D. Ga.

1995), the United States District Court for the Southern District of Georgia followed the ruling of the Tenth Circuit Court of Appeals in Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 784 (10th Cir. 1995), that "a plaintiff can rely on a defendant's 'notice of evidence of sexual harassment ... that is similar in nature and near in time to his sexual harassment of [the plaintiff] in order to raise a genuine issue of material fact as to whether [the defendant] knew or should have known of [the alleged harasser's] conduct.'" 61 F.3d at 784 (citing Paroline v. Unisys Corp., 879 F.2d 100, 107 (4th Cir.1989), rev'd on other grounds, 900 F.2d 27 (4th Cir.1990)). This court finds these decisions persuasive. The question thus becomes whether Lawson State acted appropriately in remedying the situation of Mr. McFarland as a sexual harasser, not simply remedying the situation of Mr. McFarland as a sexual harasser of Ms. Wilkins. The court holds that Lawson State is not entitled to a summary judgment because there is a genuine issue of material fact as to whether Mr. McFarland's prior conduct toward the other female students should have alerted Lawson State to the likelihood that he would, despite warnings, also try to harass Ms. Wilkins. Such notice would have imposed a duty on Lawson State to take adequate steps to try to prevent her harassment, not merely act after the event.

Further, in addition to being subject to potential direct liability for its own negligence, Lawson State may be subject, under the Supreme Court's decisions in Faragher and Ellerth, to vicarious liability for the sexual harassment committed by its employee, Mr. McFarland, who was the plaintiff's supervisor. Strictly speaking, the Amended Complaint in this case does not assert that Lawson State is vicariously liable under VII for Mr. McFarland's harassment. However, plaintiffs whose filings predated the announcement of the liability standard for employers under Title VII are not required to have anticipated this standard in their pleadings. Coates, supra, 160 F.3d at 691. Thus, the plaintiff will be given an opportunity to amend her complaint in order to allege that Lawson State is vicariously liable under Title VII for the sexual harassment allegedly committed by Mr. McFarland. See Ellerth, ___ U.S. at ___, 118 S.Ct. at 2271 (notwithstanding that original complaint was framed according to standards prevailing at the time, "[the plaintiff] should have an adequate opportunity to prove she has a claim [under the new standards] for which Burlington is liable").

If the plaintiff does choose to amend her complaint to include an allegation of vicarious

liability, and since there is not an allegation that Mr. McFarland took any tangible employment action against Ms. Wilkins, Lawson State will likewise be entitled to file an amended answer asserting an affirmative defense that it (a) exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that Ms. Wilkins unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Indeed, notwithstanding that it was filed prior to the release of Faragher and Ellerth, Lawson State's Answer to the plaintiff's Amended Complant contains the following as its fourth defense: "Defendant Lawson State had in place a proper grievance procedure and the plaintiffs (sic) failed to follow such a procedure for reporting complaints to Lawson State College." Technically, this statement does not contain all the necessary elements of the affirmative defense as set out in Faragher and Ellerth. Neither the fact that an employer has established a grievance procedure nor the fact that the employer does not have actual knowledge of harassment automatically result in employer immunity under Title VII. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986). Indeed, in Faragher, the employer was found to be vicariously liable notwithstanding that it had established a grievance procedure that was not utilized by the employee charging harassment. See ___ U.S. at ___, 118 S.Ct. at 2280-81. The affirmative defense requires that employer acted reasonably under all the circumstances in preventing and correcting sexually harassing behavior and that the employee acted unreasonably in failing to take advantage of such protective measures. As the court finds that questions of material fact would appear to exist regarding such an affirmative defense, Lawson State would be permitted an opportunity to amend its answer to include it. Cf. Faragher, ___ U.S. ___, 118 S.Ct. at 2292 (stating that an employer would have been given an opportunity to raise the affirmative defense if there were any serious prospect of its presenting one).

## II. Defendant Charles McFarland's Motion for Summary Judgment

Wilkins states several claims against Mr. McFarland, in his individual capacity. First, she alleges that Mr. McFarland is liable for the torts of assault and battery and invasion of privacy under Alabama law. She also asserts a claim against him brought pursuant to 42 U.S.C. § 1983. In his

motion, Mr. McFarland argues that he is entitled to summary judgment on all of these claims against him.

A. State law claims.

The court concludes that genuine issues of material fact remain regarding the plaintiff's state law claims alleging assault and battery and invasion of privacy. Accordingly, Mr. McFarland's motion for summary judgment on these claims is due to be denied.

B. § 1983 claim.

Ms. Wilkins has brought a claim against Mr. McFarland pursuant to 42 U.S.C. § 1983, based upon her allegations that he sexually harassed and assaulted her. Am. Compl. ¶ 18. Although it is not entirely clear, it appears that the plaintiff claims that Mr. McFarland's sexual assault and sexual harassment of her violated her rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. See Am. Compl. ¶ 1. Mr. McFarland first argues that he is entitled to summary judgment on this claim because, he alleges, this circuit has not recognized that sexual harassment may give rise to a § 1983 cause of action. However, this court has located decisions to the contrary, holding that sexual harassment in public employment may violate the Equal Protection Clause of the United States Constitution and thus support a § 1983 claim. See Watkins v. Bowden, 105 F.3d 1344 (11th Cir. 1997); Cross v. Alabama, 49 F.3d 1490 (11th Cir.1995).

Mr. McFarland next contends that he is entitled to summary judgment on this claim because, he argues, the plaintiff's allegations of harassment outlined in her complaint are not sufficiently specific as to time and place. Suffice it to say that since Mr. McFarland has long since filed an answer and participated in discovery, the court considers his attack on the specificity of the plaintiff's amended complaint untimely. Furthermore, while this court recognizes that there is in the Eleventh Circuit a heightened pleading requirement with respect to individual immunity from suit under § 1983, see GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998), the court notes that Mr. McFarland does not argue in his motion for summary judgment that he is immune from suit under § 1983. Indeed, the court notes that the weight of authority affirmatively indicates that his alleged conduct in this case would not allow him to enjoy such immunity with respect to a § 1983

claim alleging a violation of the Equal Protection Clause. See Braddy v. Florida Dep't of Labor and Employment Services, 133 F.3d 797, 802-03 (11th Cir. 1998); Cross, supra, 49 F.3d at 1502.

Finally, Mr. McFarland argues that he cannot be liable under § 1983 because the evidence does not indicate that his alleged harassment of Ms. Wilkins was sufficiently severe to create a hostile work environment. The court has already rejected the same argument regarding Lawson State's motion for summary judgment. Thus, Mr. McFarland's motion for summary judgment on the plaintiff's § 1983 claim is due to be denied.

## III. Conclusion

Based on the foregoing, the court concludes that Lawson State's motion for summary judgment is due to be granted in part, insofar as it claimed that the plaintiff cannot recover under Title VII for alleged sexual harassment that occurred prior to her final period of employment at the Lawson State bookstore under Mr. McFarland's supervision. The court also concludes that Mr. McFarland's motion for summary judgment, on the plaintiff's claims against him under 42 U.S.C. § 1983 and Alabama state law, is due to be denied in its entirety.

DONE and ORDERED this 23rd day of December 1998.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE